GARDEN, JUDGE:
On March 16, 1973 around 4:00 a.m. the claimant, while driving east on the Old Monongah Road in Marion' County, failed to negotiate a sharp turn to his left, went through a wire fence and rolled over. Claimant was thrown free from the car as it rolled over, the car finally coming to rest upside down in a small creek. Needless to say, the claimant suffered serious permanent injuries.
The claimant, a resident of the City of Fairmont, had worked the afternoon shift the day before the accident at the Owens-Illinois plant in Fairmont. When his shift was completed around 11:00 p.m., he then proceeded to a friend’s home where a card game was being held. During the card party which continued until 3:30 a.m., the claimant testified that he consumed two, maybe three, beers. After the party was over the claimant drove a friend, who lived in Kingmount, home. It was on his return trip to his home in Fairmont that the accident occurred.
From photographs of the Old Monongah Road at and near the scene of the accident which were introduced in evidence, it appears that this is a typical hard surfaced, two-lane, secondary road situated in the open country area of Marion County. The claimant testified that he was traveling at a speed of 35 miles per hour and that there were no speed limit signs posted that he *255 observed. As the curve which the claimant failed to successfully negotiate is approached, the road is straight, slightly descending, to the point where the admittedly sharp curve to the left commences. The main thrust of the claimant’s complaint was that respondent was negligent in failing to erect signs indicating to a motorist that he was approaching a sharp curve or in the alternative in failing to erect signs directing a motorist to travel at a reduced speed.
In support of this contention, testimony was introduced, without objection, that respondent shortly after the claimant’s accident erected signs which warned approaching motorists of this sharp curve. The owner of the property upon which the claimant intruded, Ernest Melvin Chipps, Jr., testified that at least 7 or 8 accidents had occurred at this-particular curve while he had owned the subject property and that he had called on at least one occasion, the respondent’s headquarters in Fairmont and had complained of their failure to erect signs and was advised that the matter would be looked into. Mr. Chipps also testified that he was a member of the Kuhn’s Run Improvement Association, a group interested in an area near the accident scene and that this group had also complained of the dangerous condition of the curve. On the other hand, Gary L. Warhoftig, Traffic Operations Engineer for respondent’s Traffic Engineering Division, and Charles Edward Chuckery, respondent’s Regional Traffic Supervisor for the region embracing the accident scene, both testified that neither of them in their official capacities had received any complaints concerning the condition of the subject curve prior to March 16, 1973.
The claimant had been in the military service from 1969 until October of 1972 when he returned to the Fairmont area and resumed work at his former place of employment, Owens-Illinois, on January 15, 1973. He indicated that he had not traveled the subject road between the time of his return from military service and the date of the accident, but he admitted on cross-examination that he did remember this particular curve from years past. However, before exploring any further the issue of claimant’s contributory negligence in failing to keep his car under control or to maintain a proper lookout, etc., we believe that we should first address ourselves to the threshold issue as to whether negligence on the part of the respondent has been demonstrated.
This Court was faced with a similar issue in the claim of Cassel v. Dept of Highways, 8 Ct. Cl. 254, which also involved serious *256 personal injuries. In that case the claimant contended the respondent had been negligent in, among other things, failing to mark a curve with any signs or warning devices of any nature, and this Court held that the duty to erect guard rails, center lines or danger signals at a particular location was discretionary and that its failure to comply with such a limited duty did not constitute negligence. This Court in Cassel adopted the following language of our Supreme Court of Appeals as set forth in Adkins v. Sims, 130 W.Va. 645, 46 S.E. 2d 81 (1947) concerning this issue:
“We do not think the failure of the state road commissioner to provide guardrails and roadmarkers, and to paint a center line on the highway, constitutes negligence of any character, and particularly no such negligence as would create a moral obligation on the part of the State to pay damages for injury or death, assumed to have occurred through such failure, and as the proximate cause thereof. The very nature of the obligation of the State, in respect to the construction and maintenance of its highways, precludes the idea that its failure to exercise discretion in favor of a particular location over another, or whether it should provide guardrails, center lines- or danger signals at that point, is an act of negligence. Certainly, it must be known, as a matter of common information, that places of danger on our highways exist at innumerable points, particularly on our secondary roads, and in many instances on primary roads. This being a mountainous country, many of these roads are narrow, with steep grades and sharp curves.
We do not believe the evidence, in view of the prior law followed by this Court and for which we perceive no justification for a departure, supports any finding of negligence on the part of the respondent, and consequently we deny an award in this claim.
Claim disallowed.